IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Master Case No. 5:15-CV-00013-BR

IN RE: NC SWINE FARM )
NUISANCE LITIGATION )
)
)
_____)

THIS DOCUMENT RELATES TO:
ALL CASES

## PROTOCOL FOR THE MAINTENANCE AND DISCOVERY OF ELECTRONICALLY STORED INFORMATION

The parties, through counsel, have agreed to the form and entry of this Order ("ESI Order") establishing a protocol for the production of Electronically Stored Information ("ESI") in this matter. The Court hereby approves the parties' joint submission as follows:

I. SCOPE

    A. The procedures and protocols outlined herein govern the search for, review and production of ESI by a party during the pendency of this litigation.

    B. As used in this order, the terms "ESI" or "Electronically Stored Information" mean discoverable documents and data existing in electronic form including e-mail and attachments, word processing documents, spreadsheets, electronic slide presentations, databases, Internet, Intranet, or Extranet content and other reasonably accessible electronically stored information that is relevant to the claims or defenses of any party subject to discovery pursuant to Fed. R. Civ. P. 26 and that is in the custody or control of a Party.

II. IDENTIFICATION OF RESPONSIVE ESI

    A. Documents and ESI which are neither privileged nor otherwise protected shall be timely reviewed and produced in accordance with this ESI Order. After receiving requests for production of documents, the party making the production (the "Producing Party") shall conduct a reasonable and good faith search for responsive ESI.

    B. Absent a further order of the Court, a Producing Party shall not have an obligation to search or produce from sources of ESI that it in good faith identifies as not reasonably accessible because of undue burden or cost in accordance with Fed. R. Civ. P. 26(b)(2)(B).

1

C.     Search Terms. The parties shall meet and confer and reach agreement as to the method of searching, and the words, terms, and phrases to be used to locate and identify potentially responsive ESI. The parties shall also agree on the timing and conditions of any additional searches that may become necessary in the normal course of discovery. If the parties cannot reach an agreement in this regard, either party may file an appropriate motion to compel or motion for a protective order with the Court.

D.     Custodians and Electronic Systems. The parties shall meet and confer to identify the custodians whose email and other ESI will be searched, and any other electronic systems that will be searched, using the agreed search terms from Section II.C. The parties shall also discuss prioritizing or organizing by tier the custodians, with the first priority custodians searched and reviewed first, and any further custodians searched only if the party requesting the discovery ("Requesting Party") identifies why searches of additional custodians are necessary and would not be largely duplicative. If the parties cannot reach an agreement in this regard, either party may file an appropriate motion to compel or motion for a protective order with the Court.

E.     Technology Assisted Review in Lieu of Search Terms. In lieu of identifying responsive ESI using the search terms and custodians/electronic systems as described in Sections II.C & II.D above, a party may use a technology assisted review or TAR platform to identify potentially relevant documents and ESI.

F.     Date Range. The parties shall meet and confer and reach agreement on an appropriate date range or series of ranges for searching potentially responsive ESI or categories of same.

G.     System Files. Common system and program files as defined by the National Institute of Standards and Technology or NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced. The parties shall meet and confer on any additional file types that also need not be processed, reviewed, or produced.

III. PRODUCTION OF ESI

A.     General Document Production Format. The following provisions shall generally govern the production format and procedure for ESI other than databases or spreadsheets, unless otherwise agreed to by the parties.

1.     Format. All ESI, other than databases or spreadsheets, shall be produced in a single- or multi-page 300 dpi TIFF image or PDF file with a 'Summation .DII' file with standard delimiters and OPT file for image loading. Extracted Text shall be provided for all documents unless it cannot be obtained. To the extent a document is redacted, extracted text files for such document shall not contain text for the redacted portions of the document. Each TIFF or PDF image will be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production padded to the same number of characters; (3) contains no special characters or embedded spaces; and (4) is sequential within a given document. If a Bates

2

number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. Each TIFF or PDF image file shall be named with the Bates Number corresponding to the number assigned to the document page contained in that image. In the event a party determines that it is unable to produce in the format specified in this section without incurring unreasonable expense, or if particular documents otherwise warrant a different format, the parties shall meet and confer to agree upon an alternative format for production. The parties agree not to degrade the searchability of documents as part of the document production process.

    2.    <u>Metadata</u>. To the extent that any of the following metadata fields associated with all applicable documents are available, the Producing Party will produce those metadata fields to the Requesting Party: file name, file size, author, application date created, application date last modified, date last saved, original file path, subject line, date sent, time sent, sender/author, recipient(s), copyee(s), and blind copyee(s). For emails with attachments, the Producing Party will indicate when a parent-child relationship between the message and the attachment exists. A Producing Party shall also produce a load file with each production with the following fields: Starting Bates; Ending Bates; Begin Attach; and End Attach. If any metadata described in this section does not exist, is not reasonably accessible, is not reasonably available, or would be unduly burdensome to collect or provide, nothing in this ESI Order shall require any party to extract, capture, collect or produce such metadata.

    3.    <u>Appearance</u>. Each document's electronic image shall convey the same information and image as the original document except for redactions for any privilege or for otherwise properly redacted information. Documents shall appear with any revisions and/or comments visible and printed. Documents that present imaging or formatting problems shall be promptly identified and the parties shall meet and confer in an attempt to resolve the problems.

    4.    <u>Unitization</u>. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file of the Producing Party or shall be documented in a load file or otherwise electronically tracked.

    5.    <u>Color</u>. Documents containing color, other than photographs, need not be produced in color in the first instance. However, if good cause exists, the Requesting Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents requested to be produced in color format; and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests if the Requesting Party has demonstrated good cause, but need not make such production until the parties reach agreement regarding apportionment of any additional costs associated with the production of documents in color.

    6.    <u>Exception Files</u>. Files that cannot be produced or imaged due to technical difficulties shall be identified as exception files and identified on a log listing the file's

3

name, custodian, and reason for the exception. Common exception files may include, without limitation, corruption, password protection, and foreign language documents.

B. **Production Format For Information From Databases and Spreadsheets.** The following provisions shall generally govern the production format and procedure for databases and spreadsheets, unless otherwise agreed to by the parties:

1. **Spreadsheets.** If any Excel file, .csv file and other similar spreadsheet file cannot be imaged effectively pursuant to Section A.1 above, it will be produced in native format ("Native File"). Native Files will be provided in a self-identified "Natives" directory. Each Native File will be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files will be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each spreadsheet will be included in the load file indicating the relative file path to each native file on the Production Media. Native Files will be produced with extracted text and applicable metadata fields if possible and consistent with Section III.A.2 above. For documents that contain redacted text, the parties may either apply the redactions directly on the native file itself or produce TIFF image files with burned-in redactions in lieu of a Native File and TIFF placeholder image. Each Producing Party will make reasonable efforts to ensure that Native Files, prior to conversion to TIFF, reveal hidden data from redacted Native Files that are produced as TIFF image files and will be formatted so as to be readable. (For example, column widths should be formatted so that numbers do not appear as "#########".) Under these circumstances, all single-page TIFF images shall include row and column headings.

2. **Databases.** If discovery requires production of ESI contained in a database, the Producing Party at its option may provide the database as a Native File pursuant to Section III.B.1 above, or may comply with the discovery request by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format) which shall be produced as outlined in Section III.B.1, above. The first line of each such file will, to the extent possible, show the column headers for each field of data included. The parties shall meet and confer as needed to finalize the appropriate data extraction and production format for specific information contained in particular databases.

3. **Requests for Other Native Files.** Other than as specifically set forth above, a Producing Party need not produce documents in native format. If good cause exists to request production of certain ESI in native format, the Requesting Party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The Producing Party shall not unreasonably deny such requests if the Requesting Party has demonstrated good cause for receiving the ESI in native format. Each file produced in response to such requests will be produced to the extent possible consistent with Section III.B.1 above.

4

C.   Production Media. The Producing Party shall produce documents on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via "dropbox" or other such methods of transmission or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall be labeled with (1) the party making the production, (2) the date of the production, (3) text referencing that it was produced in this matter; (4) the Bates Number range of the materials contained on the Production Media; and (5) any confidentiality designation(s) consistent with the terms of the Protective Order entered in this matter. To maximize the security of information in transit, any Production Media may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

D.   Duplicate Production Not Required. ESI files need only be produced once. The Producing Party will apply global deduplication to responsive ESI based on MD5 Hash values or an equivalent deduplication key. Email will be deduplicated by family, not on an individual basis. Stand-alone documents may be deduplicated against email attachments provided that the email attachment is the duplicate that is produced. All natives, even deduplicated versions, will be retained in a format readily accessible to be produced upon request.

## IV. MISCELLANEOUS PROVISIONS

A.   If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the parties shall meet and confer to agree on a reasonable, alternative form of production. Any party may file a motion with the Court to seek relief from this ESI Order.

B.   Each party will presumptively bear its own costs of production. However, the parties reserve the right to seek cost shifting as appropriate at a later time.

C.   Nothing in this ESI Order shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at the appropriate time.

D.   The parties may agree to modify or waive the terms of this ESI Order in a writing signed by counsel for the affected parties.

Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED.

This _21_ day of _May_, 2015.

_____
Robert B. Jones, Jr.
United States Magistrate Judge

5

CONSENTED AND AGREED TO:

/s/ Mona Lisa Wallace
Mona Lisa Wallace -- N.C. Bar No. 9021
John Hughes -- N.C. Bar No. 22126
WALLACE & GRAHAM, P.A.
525 North Main Street
Salisbury, NC 28144
Tel: (704) 633-5244
Fax: (704) 633-9434
mwallace@wallacegraham.com
jhughes@wallacegraham.com

*Attorneys for Plaintiffs*


/s/ Mark E. Anderson
Mark E. Anderson (N.C. Bar No. 15764)
McGUIREWOODS LLP
2600 Two Hannover Square
Raleigh, North Carolina 27601
Telephone: (919) 755-6600
Facsimile: (919) 755-6699
Email: manderson@mcguirewoods.com

Eugene E. Mathews III (Va. Bar No. 36384)
Tennille J. Checkovich (Va. Bar No. 68028)
(*By Special Appearance*)
McGUIREWOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
Email: mmathews@mcguirewoods.com
       tcheckovich@mcguirewoods.com

*Attorneys for Murphy-Brown, LLC*

6