IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

|                              |   |                                    |
|------------------------------|---|------------------------------------|
| IN RE: NC SWINE FARM         ) | Master Case No. 5:15-CV-00013-BR |
| NUISANCE LITIGATION          ) |                                    |
|                              ) | O R D E R                          |

THIS DOCUMENT RELATES TO:

ALL CASES

This matter is before the court on Defendant Murphy-Brown LLC's ("Defendant" or "Murphy-Brown") Motion to Quash Plaintiffs' Notice of *De Bene Esse* Deposition of Steven Wing. [DE-136]. Plaintiff filed a response in opposition [DE-146], and on July 5, 2016 the court held a telephonic hearing on the motion [DE-150]. For the reasons that follow, the motion is denied but the court will alternatively modify the subpoena.

## I. BACKGROUND

This litigation is comprised of 26 cases filed in this court alleging claims for nuisance, negligence, and punitive damages stemming from hog farming operations in eastern North Carolina. *See, e.g., Anderson v. Murphy-Brown, LLC*, No. 7:14-CV-00183-BR, Second Am. Compl. [DE-34]. After engaging in preliminary discovery with respect to certain threshold issues, *see* May 21, 2015 Interim Case Management Order [DE-26], the parties selected the following five cases on which to proceed with more detailed discovery: *Anderson v. Murphy-Brown LLC*, No. 7:14-CV-00183-BR; *Artis v. Murphy-Brown LLC*, No. 7:14-CV-00237-BR; *Gillis v. Murphy-Brown LLC*, No. 7:14-CV-00185-BR; *McGowan v. Murphy-Brown LLC*, No. 7:14-CV-00182-BR; and *McKiver v. Murphy-Brown LLC*, No. 7:14-CV-00180-BR (collectively, the "Discovery Pool Cases"). [DE-96-

1]. Discovery in the Discovery Pool Cases is underway, with fact discovery to conclude on October 31, 2016, expert discovery to take place thereafter and conclude by February 10, 2017, and dispositive motions to be filed by March 31, 2017. *See* Apr. 11, 2016 Interim Scheduling Order [DE-96-1]; May 19, 2016 Interim Scheduling Order [DE-111].

## II. DISCUSSION

Dr. Steven Wing is an associate professor of epidemiology at UNC Chapel Hill, and one of his primary areas of study has been the effects of North Carolina confined animal feeding operations ("CAFO") on nearby communities. June 28, 2016 Wing Decl. [DE-146-5] ¶¶ 1, 7, 9. Plaintiffs retained Dr. Wing as an expert and filed a declaration of his opinions on December 8, 2014 in support of Plaintiffs' motion to amend the complaint. *Gillis v. Murphy-Brown LLC*, No. 7:14-CV-00185-BR, Dec. 7, 2014 Wing Decl. [DE-31-4]. In February 2015, Dr. Wing was diagnosed with stage 4 colon cancer with liver metastases. June 28, 2016 Wing Decl. [DE-146-5] ¶ 2. In May 2015, Plaintiffs' counsel informed Defendant's counsel of the possible need for a *de bene esse* deposition. Checkovich Decl. [DE-138] ¶ 4. However, Dr. Wing responded positively to treatment and in June 2015, Plaintiffs' counsel informed Defendant's counsel Dr. Wing did not believe such a deposition was yet needed. Hughes Decl. [DE-146-6] ¶ 12.

On November 20, 2015, Defendant served a document subpoena on Dr. Wing, which Plaintiffs' counsel accepted on Dr. Wing's behalf. *Id.*; Subpoena to Produce Documents [DE-138-2]. Defendant sought raw data and related materials from studies cited in thirteen articles Dr. Wing has authored or co-authored, twelve of which were cited in Dr. Wing's previously filed declaration and all of which are cited in his expert report. Def.'s Mem. [DE-137] at 2-3 (citing Subpoena to Produce Documents [DE-138-2]; Wing Expert Report [DE-138-8]). On December 7, 2015,

2

Plaintiffs served Dr. Wing's objections to the subpoena. Wing's Obj. [DE-138-4]. Plaintiffs lodged several objections to the subpoena, including (1) that it was premature because experts had not been formally designated and merits discovery had not yet occurred where Dr. Wing's opinions were expected to address merits issues, (2) that the discovery would violate the scheduling order, and (3) that the information was neither relevant nor likely to lead to the discovery of admissible evidence. *Id.* Counsel for the parties had multiple calls regarding the issues raised by the subpoena, and Plaintiffs' counsel advised Defendant's counsel that, ultimately, the information sought was in the control of UNC and not Dr. Wing and some of the information was subject to Certificates of Confidentiality issued by the government agencies sponsoring the research, the National Institutes of Health ("NIH") and the National Institute of Environmental Health Sciences ("NIEHS"). Hughes Decl. [DE-146-6] ¶¶ 12-14. Plaintiffs' counsel advised Defendant's counsel to reissue the subpoena to UNC and provided contact information for certain attorneys Plaintiffs' counsel had communicated with at UNC, NIH, and NIEHS. *Id.* On February 4, 2016, Defendant responded to Dr. Wing's objections [DE-138-5], and on March 14, 2016, Dr. Wing supplemented his objections, maintaining the previous objections, but also stating that the information sought was in the "custody and control of UNC" and also that at "the appropriate time, Dr. Wing will produce materials that form the basis of his expert opinion," [DE-146-4].

In March and April of 2016, Dr. Wing's condition deteriorated and he was hospitalized. June 28, 2016 Wing Decl. [DE-146-5] ¶ 3. Dr. Wing advised Plaintiffs' counsel that he needed surgery and was not in a condition to be deposed unless the surgery was successful in providing a window of time where he would be stronger. *Id.* Plaintiffs notified defense counsel of these developments. Pls.' Opp'n [DE-146] at 3. Dr. Wing underwent surgery and indicates he is now able to sit for a

3

deposition, but describes this period of improvement as temporary because his condition is terminal and his treatment palliative. June 28, 2016 Wing Decl. [DE-146-5] ¶ 4. On June 15, the parties conferred and agreed that Plaintiffs would serve Dr. Wing's expert report and deposition notice, Defendant would object, and the parties would seek resolution from the court. Pls.' Opp'n [DE-146] at 3. Plaintiffs served Dr. Wing's expert report on June 16 and noticed his *de bene esse* deposition for July 7. *Id.*

Defendant contends that Plaintiffs cannot justify the extraordinary measure of taking their own expert's *de bene esse* deposition to cover topics Plaintiffs' counsel previously disclaimed as irrelevant and that Defendant will be significantly prejudiced if Plaintiffs are permitted to take Dr. Wing's trial testimony on an expedited basis prior to the conclusion of fact and expert discovery. Def.'s Mem. [DE-137] at 4-10. Plaintiffs in response contend that they will be prejudiced and suffer irreparable harm without Dr. Wing's unique testimony, that Defendant's arguments go to admissibility and are premature, and that no further discovery is necessary for Defendant to adequately cross-examine Dr. Wing. Pls.' Opp'n [DE-146] at 6-10.

First, Defendant challenges the propriety of using a *de bene esse* deposition for an expert witness, as opposed to a fact witness, and suggests that many courts refuse to allow an expert's prior testimony in lieu of live testimony. Def.'s Mem. [DE-137] at 5. However, the cases cited by Defendant are largely distinguishable and do not provide grounds for denying Plaintiffs the opportunity to take Dr. Wing's *de bene esse* deposition. For example, Defendant's primary authority, *Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 534-35 (2d Cir. 1972), did not involve the taking of a *de bene esse* deposition, but rather addressed the use of expert testimony from a prior trial on the same issue. And, importantly, while noting the preference for live expert testimony, the

4

Second Circuit found no error in the trial judge allowing use of the prior expert testimony because (1) the expert would have been found to be "unavailable" due to an inability to secure the expert's attendance at trial voluntarily, (2) the expert, who had written on the subject at issue since his dissertation, had some unique testimony to contribute, and (3) there was no prejudice to the opposing party who knew from the beginning of the trial that the offering party would rely on the expert's prior testimony and "had the rare opportunity to tailor its case to the defense that would be presented." *Id.* at 536-37. Further, it is significant that the discussion in *Carter-Wallace* was regarding the *use* of prior testimony, not the *taking* of a *de bene esse* deposition. Other cases cited by Defendant in this regard involve either the use of a deposition at trial, the taking of a *de bene esse* deposition *after* the close of discovery, which this court's Local Civil Rule 32.1 expressly allows, or are otherwise materially distinguishable. *See, e.g., Smith v. Royal Caribbean Cruises, Ltd.*, 302 F.R.D. 688, 692-93 (S.D. Fla. 2014) (declining to allow *de bene esse* deposition after the close of discovery); *Havens v. Maritime Comms./Land Mobile LLC*, No. 11-993(KSH)(CLW), 2014 WL 2094035, at *4 (D. N.J. May 20, 2014) (unpublished) (quashing trial subpoenas to witnesses outside the geographical boundaries set by Rule 45 and denying leave to take a *de bene esse* deposition of those witnesses where discovery had long been closed and to allow the depositions would allow the deposing party to conduct inappropriate mid-trial, third-party discovery to gather information that could have been obtained earlier); *Weiss v. First Unum Life Ins.*, No. 02-4249 (GEB), 2010 WL 1027610, at *1-3 (D. N.J. Mar. 16, 2010) (unpublished) (finding that a doctor's conclusory statements and counsel's arguments did not sufficiently establish illness permitting trial deposition); *Kamara v. United States*, No. 04-CIV-626(THK), 2005 WL 2298176, at *6 (S.D.N.Y. Sept. 20, 2005) (unpublished) (declining to allow the use at trial of a deposition that had already been taken

where the offering party made no showing of unavailability of the witness and the testimony presented a hearsay problem); *Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*, No. 97-529 MMS, 2000 WL 135129, at *2-3 (D. Del. Jan. 13, 2000) (unpublished) (declining to allow the use at trial of a deposition where the offering party failed to show it made reasonable efforts to assure the expert's attendance at trial). Here, the taking of the deposition and not its use at trial is at issue, there appears to be no question as to the legitimacy of Dr. Wing's potential unavailability, and Local Civil Rule 32.1 expressly allows for the taking of *de bene esse* depositions outside the discovery period. The court has found no authority that would preclude the taking of a *de bene esse* deposition on the basis that the deponent is an expert as opposed to a fact witness.

To the extent Defendant's arguments rest on the subject matter of Dr. Wing's testimony, the court agrees with Plaintiffs that they provide no grounds to preclude Dr. Wing's *de bene esse* deposition. The relevance of Dr. Wing's testimony is hotly disputed between the parties. Defendant argues that because Plaintiffs have represented to the court that they will not assert any medical claims and Dr. Wing's expert report addresses alleged human health effects of hog farms, Dr. Wing's opinions are irrelevant. Plaintiffs, on the other hand, argue that Dr. Wing's opinions are relevant to the issue of community impact of Defendant's operation and that the health effects commonly associated with living in proximity to hog farms are directly relevant to social utility and use and enjoyment of land. Plaintiffs characterize Dr. Wing as the preeminent expert on the community impact issue of hog CAFOs in North Carolina. The disputed relevance of Dr. Wing's expert testimony goes to the issue of whether Dr. Wing's deposition may be used at trial, as opposed to whether it should be taken in the first instance, and provides no basis to quash the subpoena.

Finally, Defendant argues Plaintiffs are attempting to subvert the court's scheduling order by expediting the testimony of an expert witness and contends that, as a result, it will be immensely prejudiced by being unable to adequately prepare to cross-examine Dr. Wing at the *de bene esse* deposition. Def.'s Mem. [DE-137] at 4-5, 7-10. At the hearing, Defendant further explained that questioning for purposes of an expert discovery deposition is different than questioning for purposes of cross-examination at trial and that it could, in fact, prejudice Defendant with the jury were the jury to hear Defendant ask certain questions appropriate for purposes of an expert deposition. Plaintiff responds that Defendant has known of Dr. Wing's potential unavailability for trial, yet failed to serve a subpoena for documents on UNC or to file a motion to compel based on Wing's objections, and the raw data underlying Dr. Wing's studies that Defendant seeks is not necessary to depose Dr. Wing because his opinions relate to historical work on hog confinements and not case-specific work. Pls.' Opp'n [DE-146] at 8-9. At the hearing, Plaintiffs disputed the notion that fact discovery must be completed prior to the taking of Dr. Wing's *de bene esse* deposition due to the nature of his opinions.

Defendant first contends it will be prejudiced because fact discovery is still ongoing and it will be hindered in its ability to question Dr. Wing regarding his opinions in light of the facts of the case. Both parties agree that Dr. Wing's opinions are not Plaintiff-specific, but rather address general harms to communities surrounding hog farms, lessening any prejudice to Defendant due to fact discovery not being complete. Furthermore, although Defendant contends it would not be very helpful in this regard, the court notes that the parties have exchanged preliminary discovery, including fact sheets regarding the individual Plaintiffs, some written discovery in the Discovery Pool Cases, and Defendant has taken some depositions of individual Plaintiffs. This further minimizes the potential prejudice to Defendant.

7

Defendant next contends it will be prejudiced because it does not have the raw data and underlying documents supporting Dr. Wing's studies that form the basis of his opinions, which it sought from Dr. Wing by subpoena. However, at the hearing Defendant's counsel indicated that after Defendant learned from Plaintiffs' counsel that Dr. Wing believed those documents to be in the custody and control of UNC, Defendant provided a subpoena for documents to UNC counsel, but failed to follow-up as to the status of the request, apparently due to Defendant's belief that Plaintiffs' stated intention not to pursue medical claims would moot the issue. Defendant's counsel also indicated at the hearing that he contacted UNC after Dr. Wing's deposition subpoena was served to inquire regarding the status of the documents, but received no definitive answer. Defendant filed no motion to compel either Dr. Wing or UNC to produce the raw data and other supporting documents, and any prejudice to Defendant in this regard is, at least in part, of its own making. Additionally, Plaintiffs' counsel asserted at the hearing that Defendant has the literature forming the basis of Dr. Wing's opinions and Defendant did not dispute that representation.

Finally, Defendant contends that it will be prejudiced by not having the opportunity to conduct an expert deposition of Dr. Wing prior to cross-examining him for purposes of trial testimony. Defendant expresses a legitimate concern regarding the potential prejudice that could stem from being forced to conduct a trial cross-examination of Plaintiffs' expert without the benefit of having first conducted an expert deposition, given the different purposes served by these types of depositions. Plaintiffs correctly point out that the Federal Rules make no distinction between discovery and trial preservation depositions. *See* Fed. R. Civ. P. 30, 32. However, "[t]he Fourth Circuit, this court, and other courts continue to recognize the distinct role of a *de bene esse* deposition to preserve trial testimony and to distinguish it from a deposition taken for the purpose

of discovery." *The Neighbors Law Firm, P.C. v. Highland Capital Mgmt., L.P.*, No. 5:09-CV-352-F, 2011 WL 649925, at *2 (E.D.N.C. Feb. 10, 2011) (unpublished) (citing *Tatman v. Collins*, 938 F.2d 509, 510 (4th Cir. 1991) (recognizing the distinct purpose of *de bene esse* depositions to preserve testimony for use at trial); *Lucas v. Pactiv Corp.*, No. 5:08CV79, 2009 WL 5197838, at *4 (W.D.Va. Dec. 22, 2009) (unpublished) (denying defendant's motion to quash *de bene esse* depositions and rejecting defendant's argument that the depositions should have been taken during the discovery period); *Bouygues Telecom, S.A. v. Tekelec, Inc.*, 238 F.R.D. 413, 414 (E.D.N.C. 2006) (noting distinction between discovery and *de bene esse* depositions); Local Civil Rule 32.1 (E.D.N.C.) ("Depositions *de bene esse* may be taken outside of the period of discovery.")). "The obvious purpose of discovery is to determine the opinions and positions of the opposition's witnesses and prepare for cross-examination." *Griffin v. Foley*, 542 F.3d 209, 221 (7th Cir. 2008). Additionally, in the *Tatman* case where the Fourth Circuit recognized the lack of distinction between discovery and *de bene esse* depositions, the court was concerned with whether a deposition taken during the discovery period could be used at trial under Rule 32, not whether a *de bene esse* deposition could be taken under the terms of the scheduling order. *Bouygues Telecom, S.A.*, 238 F.R.D. at 414.

Notwithstanding, the court finds that the potential prejudice to Defendant can be minimized sufficiently short of prohibiting Dr. Wing's deposition, by allowing Defendant to explore Dr. Wing's expert opinions through a discovery deposition of Dr. Wing prior to Plaintiffs' *de bene esse* deposition. *See Griffin*, 542 F.3d at 221 ("The obvious purpose of discovery is to determine the opinions and positions of the opposition's witnesses and prepare for cross-examination. Had there not been some gap in time between the discovery depositions and the cross-examination of the [plaintiffs'] experts, [defendant's] attorneys would not have been able to effectively prepare for

cross-examination."); *Polozie v. United States*, 835 F. Supp. 68, 72 (D. Conn. 1993) (noting distinction between an attorney's questioning of an expert for discovery purposes versus cross-examination at trial; "Attorneys presumably know what the purpose of a trial deposition is, and they will be mindful of the fact that they will not have another chance to develop fully the testimony of the witness. In cases involving expert testimony this is particularly the case, and the Court must bear in mind that *after taking a discovery deposition the attorney fully expects to examine the expert witness again at trial*.") (emphasis added).

At the hearing, Plaintiffs' counsel indicated that the *de bene esse* deposition would not go forward on July 7 due to Dr. Wing's chemotherapy schedule but that Dr. Wing would be available August 1–3, for four hours at a time, to sit for a deposition. The court will allow Defendant to conduct an expert discovery deposition of Dr. Wing at that time. *Griffin*, 542 F.3d at 221 (finding "reasonable and within his discretion" the magistrate judge's order allowing party to depose opposing party's expert for discovery purposes followed at a later date by a deposition to be used for trial purposes). This will allow Defendant additional time to obtain any necessary documents and to conduct additional fact discovery. If Defendant chooses to depose Dr. Wing, it shall provide the appropriate notice to Plaintiffs and Dr. Wing by no later than **July 14, 2016**. Accordingly, although the court declines to quash the subpoena to Dr. Wing, the court modifies the subpoena pursuant to Rule 45(d)(3)(A) to allow time for Defendant to take Dr. Wing's expert deposition prior to Plaintiffs taking Dr. Wing's *de bene esse* deposition. In the event Defendant declines to take Dr. Wing's expert deposition during the period of August 1–3, Plaintiffs may conduct the *de bene esse* deposition at that time. Alternatively, if Defendant conducts Dr. Wing's expert deposition during the period of August 1–3, Plaintiffs may take Dr. Wing's *de bene esse* deposition no earlier than

10

August 17, 2016, to allow Defendant time to prepare its cross-examination in light of Dr. Wing's expert deposition, and Plaintiffs shall provide the appropriate notice of the *de bene esse* deposition date to Defendant no later than **July 21, 2016**.

In sum, the court finds that the circumstances of Dr. Wing's health provide good cause to allow the taking of his *de bene esse* deposition on an expedited basis. The court also finds that any potential prejudice to Defendant from the expedited deposition is minimized by allowing Defendant to explore Dr. Wing's opinions through an expert deposition prior to the *de bene esse* deposition and that proceeding in this manner represents a reasonable balancing of the parties' legitimate competing interests. Nothing in this order precludes Defendant from raising in a motion in limine objections regarding the use at trial of Dr. Wing's *de bene esse* deposition, including in which particular cases his deposition may be used. *See Patterson v. W. Carolina Univ.*, No. 2:12CV3, 2013 WL 1629132, at *1 (W.D.N.C. Apr. 16, 2013) (unpublished) (allowing the taking of a *de bene esse* deposition, but reserving the issue of whether or not the defendant can introduce the deposition at trial for the District Court to address at trial).

### III. CONCLUSION

For the reasons set forth above, Defendant's motion to quash [DE-136] is denied, and the court alternatively modifies the subpoena in conformity with the above.

SO ORDERED, the 7 day of July 2016.

_____
Robert B. Jones, Jr.
United States Magistrate Judge

11