**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**Master Case No. 5:15-CV-00013-BR**

IN RE: NC SWINE FARM         )
NUISANCE LITIGATION       )
_____)

**THIS DOCUMENT RELATES TO:**
*McKiver v. Murphy-Brown LLC*, No. 7:14-CV-180-BR
*McGowan v. Murphy-Brown LLC*, No. 7:14-CV-182-BR
*Anderson v. Murphy-Brown LLC*, No. 7:14-CV-183-BR
*Gillis v. Murphy-Brown LLC*, No. 7:14-CV-185-BR
*Artis v. Murphy-Brown LLC*, No. 7:14-CV-237-BR

## <u>ORDER</u>

The twenty-six cases comprising this litigation concern swine farm operations in eastern North Carolina. In each case, plaintiffs, individuals who live in close proximity to specified farms, seek to recover monetary damages for nuisance and negligence. Defendant owns all the swine on the farms. To date, detailed discovery has been conducted in five "Discovery Pool Cases," which are captioned above.

A number of motions are pending before the court. Defendant has filed several motions for partial summary judgment, an omnibus motion to sever and for separate trials, and a motion in limine. Plaintiffs have filed several cross-motions for partial summary judgment. The parties and non-parties Greenwood Livestock, LLC; Joey Carter Farms; Pagle Corporation; Bandit 3, LLC; Kinlaw Farms, LLC; J. Michael Hope; and Godwin Twins, LLC (collectively, the "Independent Growers") have filed motions to seal and related motions. Facts, as necessary, are included in the discussion of these motions below.

## I. STANDARD OF REVIEW: MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  The court must ask "'whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . .'"  Maryland Highways Contractors Ass'n, Inc. v. Maryland, 933 F.2d 1246, 1252 (4th Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).  Summary judgment should be granted only in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law."  Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the non-moving party and to view the facts in the light most favorable to the non-moving party.  Id. at 255.  The moving party has the burden to show an absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials.  Anderson, 477 U.S. at 248.  When considering cross-motions for summary judgment, the court evaluates each motion separately on its own merits according to this standard.  See Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003).  "At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried.  If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly."  Thompson Everett, Inc. v. Nat'l Cable Advert., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995).

In a diversity case such as this, the court applies the controlling state's substantive law, which here is North Carolina.  See Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc. 296 F.3d 308, 312 (4th Cir. 2002).  If the state's highest court "has spoken neither directly nor indirectly on" the precise issue at hand, this court must "predict how that court would rule if presented with the issue," considering the state's intermediate appellate court's decisions unless "other persuasive data" suggests that the state's highest court would decide otherwise.  Id. (internal quotation marks and citation omitted).  The court "may also consider, *inter alia*: restatements of the law, treatises, and well considered *dicta*" in predicting how the state's highest court might rule.  Id. (citation omitted).

## II.  STANDARD OF REVIEW: MOTIONS TO SEAL

The parties and the Independent Growers have filed motions to seal various documents filed in connection with certain motions for partial summary judgment.[1]  Prior to sealing documents, a district court must first give the public adequate notice and a reasonable opportunity to be heard.  In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984).  In this case, the motions to seal were filed publicly and have been pending for some time.  Plaintiffs oppose some of the motions to seal.  No member of the public has filed any opposition to the motions to seal.

After providing public notice and an opportunity to respond to a motion to seal, the court must determine the source of the public's right to access the documents.  Stone v. Univ. of Md., 855 F.2d 178, 180 (4th Cir. 1988).  Public access to documents arises from two sources: the First Amendment and the common law.  Doe v. Pub. Citizen, 749 F.3d 246, 265 (4th Cir. 2014).  "For a right of access to a document to exist under either the First Amendment or the common law,

---

[1] Pursuant to Local Civil Rule 79.2(b)(1), the proposed sealed documents have been provisionally sealed.

the document must be a 'judicial record.'" United States v. Appelbaum, 707 F.3d 283, 290 (4th Cir. 2013) (citation omitted). "Judicial records" include not only orders filed by the court but also documents filed with the court that "play a role in the adjudicative process . . . ." Id. However, "the mere filing of a document with the court does not render the document judicial." In re Policy Mgmt. Sys. Corp., Nos. 94-2254, 94-2341, 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (citing United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995)).

Here, the First Amendment right to access is potentially implicated because the subject documents were filed in connection with summary judgment motions. See Doe, 749 F.3d at 267 ("We have squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion." (citation omitted)). In such a case,

> "[w]hen the First Amendment provides a right of access, a district court may restrict access 'only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest.'" *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). The burden of establishing the showing necessary to overcome a First Amendment right of access falls upon the party seeking to keep the information sealed. *Id.* Specific reasons must be presented to justify restricting access to the information. *Id.* (citing *Press–Enterprise Co. v. Superior Court*, 478 U.S.1, 15 (1986) ("The First Amendment right of access cannot be overcome by [a] conclusory assertion")).

Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07-CV-275-D, 2011 WL 901958, at *1 (E.D.N.C. Mar. 15, 2011).

To support their sealing request and overcome any First Amendment right of access, defendant and the Independent Growers rely primarily on the argument that the information sought to be sealed is commercially sensitive. In some cases, the First Amendment right of access may be overcome if the movant sufficiently "demonstrate[s] that the documents in question contain confidential and proprietary commercial information, including information relating to alleged trade secrets and other highly sensitive financial and business information

belonging to the parties as well as third-parties, information which is of utmost importance to them but not generally available to the public or bearing importance to any public matters." Id. at *2.

Lastly, the court must consider less drastic alternatives to sealing, and if it decides to seal documents, it must "state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing in order to provide an adequate record for review." Knight Publ'g, 743 F.2d at 235; see also Stone, 855 F.2d at 181. Less drastic alternatives to sealing entire documents include filing redacted versions of the documents. See Silicon Knights, 2011 WL 901958, at *2.

***************************

With these standards in mind, the court considers the partial summary judgment and related motions.

### III. SUFFICIENCY OF PLAINTIFFS' PROPERTY INTERESTS

One ground on which defendant moves for partial summary judgment is certain plaintiffs in the Discovery Pool Cases have insufficient property interests to maintain their nuisance claims. (DE # 315.) The identified plaintiffs are not property owners. Rather, they are adults related to the property owners and live on the subject properties either in the property owners' residences or in trailers. Because these "guests" do not pay prescribed rent nor have they entered into rental agreements, defendant argues, they are "licensees, tenants-at-will, mere occupants, or squatters" and cannot establish a *prima facie* claim for nuisance. (Mem., DE # 316, at 4.) In response, plaintiffs contend that so long as one lawfully possesses or occupies the subject property, one can recover for a nuisance.

> The law of private nuisance rests on the concept embodied in the ancient
> legal maxim *Sic utere tuo ut alienum non laedas*, meaning, in essence, that every

person should so use his own property as not to injure that of another. As a consequence, a private nuisance exists in a legal sense when one makes an improper use of his own property and in that way injures the land or some incorporeal right of one's neighbor.

Much confusion exists in respect to the legal basis of liability in the law of private nuisance because of the deplorable tendency of the courts to call everything a nuisance, and let it go at that. The confusion on this score vanishes in large part, however, when proper heed is paid to the sound propositions that private nuisance is a field of tort liability rather than a single type of tortious conduct; that the feature which gives unity to this field of tort liability is the interest invaded, namely, the interest in the use and enjoyment of land; that any substantial nontrespassory invasion of another's interest in the private use and enjoyment of land by any type of liability forming conduct is a private nuisance; that the invasion which subjects a person to liability for private nuisance may be either intentional or unintentional; that a person is subject to liability for an intentional invasion when his conduct is unreasonable under the circumstances of the particular case; and that a person is subject to liability for an unintentional invasion when his conduct is negligent, reckless or ultrahazardous.

Morgan v. High Penn Oil Co., 77 S.E.2d 682, 689 (N.C. 1953) (citations omitted). "'The essence of a private nuisance is an interference with the use and enjoyment of land. The ownership or rightful possession of land necessarily involves the right not only to the unimpaired condition of the property itself, but also to some reasonable comfort and convenience in its occupation.'" Kaplan v. Prolife Action League of Greensboro, 431 S.E.2d 828, 838 (N.C. Ct. App. 1993) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 87, at 619 (5th ed. 1984)).

Defendant accurately points out that certain cases do refer to the plaintiff's "property interest" in the context of nuisance. See Kent v. Humphries, 281 S.E.2d 43, 45 (N.C. 1981) (framing one element in the nuisance inquiry as "[D]id plaintiff have sufficient property interest in the rented space to maintain a nuisance action?"); Whiteside Estates, Inc. v. Highlands Cove, L.L.C., 553 S.E.2d 431, 437 (N.C. Ct. App. 2001) ("Once plaintiff establishes that the invasion or intrusion is unreasonable, plaintiff must prove the invasion caused substantial injury to its

property interest." (citations omitted)).   However, the court does not read these cases to mean that the plaintiff must hold fee simple title or another possessory interest (more than a tenancy at will) to recover in nuisance in every instance.

For example, in <u>Kent v. Humphries</u>, the North Carolina Supreme Court was faced with the plaintiff-tenant claiming the defendants' (the landlord and his corporation) operation of a plastics plant constituted a nuisance, resulting in the constructive eviction of the beauty salon she operated in the defendants' shopping center.   The defendants argued that the plaintiff occupied the premises under a void lease, and therefore, as a tenant at will, she could be evicted at any time and there was no violation of her limited property rights.  281 S.E.2d at 45.  Relying on the <u>Restatement (Second) of Property, Landlord and Tenant</u>, overruling prior inconsistent authority, and opting for a fairer rule, the court held that the tenancy created was actually a month-to-month tenancy.  <u>Id.</u> at 46.  As such, the court found that the plaintiff had a sufficient property interest in the rented space to maintain a nuisance claim.  <u>Id.</u>  <u>Kent</u> is more about landlord-tenant law than it is about nuisance law.  Because of the nature of what the plaintiff was claiming— constructive eviction—the parties' relationship was particularly relevant.

Under the circumstances here, the real property relationship between the owners and individuals who reside on their properties has no bearing on defendant's liability for a nuisance. The rule defendant asks the court to impose would permit a wife who owns the affected property to recover, but her husband who resides with her could not recover unless his name is on the deed to the property or he has entered into a formal rental arrangement with his wife.  There is no indication in North Carolina case law that its courts would so restrict nuisance claims.  It is enough that a plaintiff lawfully occupies the affected property with a relative.  <u>See</u> <u>Restatement (Second) of Torts</u> § 821E (Am. Law Inst. 1979) ("For a private nuisance there is liability only to

those who have property rights and privileges in respect to the use and enjoyment of the land affected, including (a) possessors of the land . . . ."); id. § 821E cmt. d ("'Possession' is not limited to occupancy under a claim of some other interest in the land, but occupancy is a sufficient interest in itself to permit recovery for invasions of the interest in the use and enjoyment of the land.").

Defendant additionally contends that two plaintiffs, Gertie Jacobs and Eddie Nicholson, Jr., have not even occupied any affected property. In support of this contention, defendant relies on the fact that Jacobs' voter registration and driver's license and Nicholson's voter registration, driver's license, and medical records reflect addresses different from the affected properties at which they claim to live. Defendant urges the court to disregard these plaintiffs' deposition testimony regarding the discrepancies on the ground that the testimony is "self-serving." The court declines to do so.

It is true that a court should not "find a genuine dispute of material fact based *solely* on [the non-movant's] self-serving testimony." Harris v. Home Sales Co., 499 F. App'x 285, 294 (4th Cir. 2012) (emphasis added) (citing Williams v. Giant Food Inc., 370 F.3d 423, 433 (4th Cir. 2004)). However, here, both plaintiffs' testimony about where they live is corroborated by sworn testimony from other witnesses. Of course, at trial defendant is free to cross-examine plaintiffs and the other witnesses about the discrepancies, but the credibility determination will be left to the jury.

In sum, plaintiffs have come forward with evidence that they lawfully occupy the affected properties. That interest is sufficient to support a claim for private nuisance. Accordingly, defendant's motion for partial summary judgment on this ground will be denied.

# IV. RIGHT-TO-FARM LAW

A.        Motion for Partial Summary Judgment

In its answers in the Discovery Pool Cases, defendant raised an affirmative defense based on the application of North Carolina's right-to-farm law, N.C. Gen. Stat. § 106-701. Plaintiffs contend that they are entitled to summary judgment on this defense. (DE # 305.) Defendant argues that plaintiffs' motion should be denied because genuine issues of material fact exist regarding the elements of the defense and plaintiffs are not entitled to judgment as a matter of law.

North Carolina's right-to-farm "law [] protects existing farming operations," Durham v. Britt, 451 S.E.2d 1, 3 (N.C. Ct. App. 1994), "[w]hen other land uses extend into agricultural . . . areas . . . by limiting the circumstances under which an agricultural . . . operation may be deemed to be a nuisance," N.C. Gen. Stat. § 106-700. The relevant portion of the law provides,

> No agricultural or forestry operation or any of its appurtenances shall be or become a nuisance, private or public, by any changed conditions in or about the locality outside of the operation after the operation has been in operation for more than one year, when such operation was not a nuisance at the time the operation began.

Id. § 106-701(a). However, nuisances resulting from negligent or improper operation are exempt from the application of this law. Id. § 106-701(a2).

Plaintiffs have come forward with evidence that they or their relatives have lived on the affected properties prior to the subject swine farms beginning operations. Defendant responds with evidence that conditions in the areas around the swine farms have changed since the swine farms began operating. Specifically, defendant cites to evidence that the number of people living within the vicinity of the farms has increased. While changed conditions are certainly relevant, under the plain language of the statute, "an agricultural operation that was not a nuisance when it

began cannot become a nuisance *due to* 'changed conditions in or about the locality thereof . . . .'" <u>Mayes v. Tabor</u>, 334 S.E2d 489, 491 (N.C. Ct. App. 1985) (emphasis added) (quoting N.C. Gen. Stat. § 106-701). In other words, for the right-to-farm law to apply, it must be on account of changed conditions in the locality outside the agricultural operation that the agricultural operation has become a nuisance.

In <u>Mayes v. Tabor</u>, the North Carolina Court of Appeals addressed this very issue. There, a private summer camp had been in operation 60 years, and the husband and wife plaintiffs had owned the camp for 19 years. <u>Id.</u> at 489-90. The defendants had owned adjacent property for 15 years and on which they raised hogs. <u>Id.</u> at 490. The plaintiffs alleged that the defendants' hog operation constituted a nuisance based on the stench from the hogs. <u>Id.</u> The defendants argued they were entitled to summary judgment based on the right-to-farm law. In rejecting this argument, the court recognized, "The [plaintiffs'] nuisance action is not based on 'changed circumstances in or about the locality' as this phrase is intended by the statute. This is not a case in which the non-agricultural use extended into an agricultural area. [The camp] has been in existence for sixty years." <u>Id.</u> at 491.

Similarly, here, plaintiffs' use of their properties as residences did not extend into an agricultural area. Their land use had been in existence well before the operations of the subject farms began. The fact that some plaintiffs may have used their land for agricultural purposes in addition to a residence or that other agricultural uses have pre-existed in the locality does not alter the court's analysis. At bottom, plaintiffs' nuisance claims have nothing to do with changed conditions in the area, and therefore, as a matter of law, the right-to-farm law does not bar those claims. Accordingly, plaintiffs are entitled to summary judgment on this defense.[2]

---

[2] Given this conclusion, the court need not rule on plaintiffs' request to strike the declaration of Roger Waldon which defendant filed in support of its response in opposition to plaintiffs' motion. Similarly, the court does not

B.      Motion to Seal

Defendant filed a related motion to seal.  (DE # 437.)  Defendant requests that the court

maintain under seal plaintiffs' Exhibit 6, (DE ## 427-29), which defendant characterizes as its

Standard Operating Procedures ("SOPs"), and plaintiffs' unredacted reply statement of facts,

(DE # 426), which briefly discusses portions of the SOPs.  Plaintiffs do not oppose defendants'

motion to seal.  (See Resp., DE # 464, at 5 ("As a matter of judicial efficiency and to avoid

creating unnecessary issues, Plaintiffs withdraw their objection to sealing of the [SOP] Manual,

in the context of the present summary judgment motion, and in light of the prior Orders.").)

The SOPs are not relevant to the court's analysis, and the court has not considered

plaintiffs' Exhibit 6 or the statements in its reply statement of facts regarding the SOPs.

Therefore, there is no right of public access to Exhibit 6 or plaintiffs' unredacted document that

discusses the exhibit.  Accordingly, the court will allow defendant's motion to seal.

## V.  AFFIRMATIVE DEFENSES

A.      Motion for Partial Summary Judgment

Plaintiffs move for partial summary judgment on the majority of the affirmative defenses

defendant raised in its answers in the Discovery Pool Cases.  (DE # 321.)  In subsequent briefing,

defendant withdrew certain defenses in the Discovery Pool Cases only, and plaintiffs withdrew

their motion as to other defenses.  Based on those actions, plaintiffs' motion is moot as to the

following defenses: no legally compensable injury (3), failure to initiate mediation (5),

reasonable use of the swine farms (6-7), reasonable actions of defendant and others and

compliance with relevant laws and standards (8-9), no duty of care owed (10), lack of proximate

resolve plaintiffs' objections to documents from the North Carolina Department of Environment and Natural
Resources that defendant also filed in support of its response as the court did not consider the documents in reaching
its conclusion.

cause (11), failure to mitigate damages (14), res judicata/collateral estoppel (19), prior settlements/release and accord and satisfaction (20), availability of special medical damages (24), and unconstitutionality of punitive damages (26).[3]

A number of the partial summary judgment motions and the motion to sever and for separate trials relate to some of the affirmative defenses defendant raised. Specifically, those motions relate to the defenses of insufficiency of property interests (15), misjoinder of claims (16), severance of claims (17), laches/estoppel/waiver (18), and future damages (23). The court has already resolved by prior order whether estoppel bars certain plaintiffs' claims. (6/2/17 Order, DE # 454.) The court has resolved the defense of insufficiency of property interests *supra*. Below or by separate order, the court will resolve the applicability of the other defenses that the parties address in separate motions.

As for its preemption defense (21), defendant initially represented that it withdrew the defense based on its understanding that plaintiffs appeared to withdraw claims based on groundwater contamination. (See Resp., DE # 338, at 24, 26-27.) In a subsequent filing, however, defendant states that because plaintiffs have not agreed to withdraw any such claims, defendant is not withdrawing the preemption defense. (Notice, DE # 452, at 3.) Plaintiffs' position is the defense is waived. (Reply Stmt., DE # 411, at 3 n.4.) The court declines to deem the defense waived at this time and will address its applicability at trial, if necessary.

Plaintiffs have moved for summary judgment on the affirmative defense pertaining to special damages (22). Defendant claims that if plaintiffs sustained damages, any such "damages do not include special damages, the amount of which is not specified in the Second Amended

---

[3] For ease of reference in this section, the court also refers to each affirmative defense by numerical paragraph from the section entitled "Affirmative Defenses" in defendant's answer to plaintiffs' second amended complaint in Anderson v. Murphy-Brown, LLC, No. 7:14-CV-183-BR, DE # 35.

Complaint." Anderson v. Murphy-Brown, LLC, No. 7:14-CV-183-BR, DE # 35, at 52. Defendant did not respond to plaintiffs' argument regarding this defense. Plaintiffs do not contend that they seek any special damages, (see Mem., DE # 322, at 19-20), and note that they believe the defense is moot, (Reply, DE # 410, at 1 n.1). Given that plaintiffs apparently do not seek to recover special damages and defendant's withdrawal of its defense regarding the availability of special medical damages, this affirmative defense is moot.

The parties contest the applicability of the remaining defenses on which plaintiffs seek summary judgment—the statute of limitations (2), contributory negligence (12), and assumption of risk (13). The court first considers the statute of limitations applicable to plaintiffs' nuisance claims.[4]

> A cause of action for nuisance is governed by the same statute of limitations as a cause of action for trespass. [*Wilson v. McLeod Oil Co.*, 398 S.E.2d 586, 596 (N.C. 1990)]. Under N.C.Gen.Stat. § 1-52(3) (1983), a cause of action for a continuing trespass "shall be commenced within three years of the original trespass." Thus, the statute of limitations on claims for continuing trespass and nuisance begins to run from the first act of trespass. However, where the trespass is recurrent, as opposed to continuing, the limitations period does not bar the claim. *See Roberts v. Baldwin*, 151 N.C. 407, 66 S.E. 346 (1909).

James v. Clark, 454 S.E.2d 826, 830 (N.C. Ct. App. 1995).

Citing to some plaintiffs' testimony which indicates "the nuisance occurs every day," defendant contends that a genuine issue of material fact exists as to whether the nuisance is a continuing or recurrent one. (Mem., DE # 338, at 14.) To the contrary, even accepting this testimony, the court is able to conclude as a matter of law the type of nuisance here. Plaintiffs allege defendant has created a nuisance by the operation of the subject farms in such a manner that repeatedly exposes plaintiffs to unpleasant odors, swarming insects, and noise from trucks

---

[4] The parties do not discuss the statute of limitations applicable to plaintiffs' negligence claims, and therefore, the court does not consider it.

traveling outside their homes, among other things.  While the building of those farms occurred more than three years prior to the actions being filed, the harm flowing from the nuisance has repeatedly occurred throughout that time and up through the filing of the actions.  What plaintiffs allege is a recurring nuisance.  See Wilson, 398 S.E.2d at 596 (recognizing that "[c]ontinuous injuries caused by the maintenance of a nuisance are barred only by the running of the statute against the recurrent trespasses" and holding the statute of limitations for a recurring trespass applies to a nuisance claim based on ongoing seepage of gasoline from the defendants' properties into the plaintiff's well water up through the time suit was filed (internal quotation marks and citation omitted)); James, 454 S.E.2d at 830-31.  As such, the three-year statute of limitations does not bar plaintiffs' nuisance claims.  Although the limitations period does not bar the nuisance claims themselves, it *does* operate to bar plaintiffs' recovery of damages beyond the three years prior to filing suit.  See Wilson, 398 S.E.2d at 596; Roberts, 66 S.E. at 346.  Accordingly, plaintiffs are not entitled to summary judgment on the statute of limitations defense.

As for contributory negligence and assumption of risk, because defendant has come forward with some evidence that arguably supports the application of these two defenses, the court declines to grant summary judgment on the defenses.  Whether defendant has come forward with sufficient evidence to warrant a jury instruction on either defense is an issue to be resolved at trial.

B.    Motions to Seal

Several motions to seal concern, at least in part, documents filed in connection with plaintiffs' partial summary judgment motion on the affirmative defenses.  The Independent Growers move to seal excerpts from the depositions of two representatives, Mike Hope and Paul

Stanley, (DE ## 366-1, 366-4).[5]  (DE # 379; see also Mem., DE # 380.)  Defendant filed these

deposition excerpts in support of its response in opposition to plaintiffs' partial summary

judgment motion.  Specifically, defendant cites to the excerpts in support of its contention that

genuine issues of material fact exist as to its defenses based on no duty of care owed (10) and

lack of proximate cause (11).  Because plaintiffs withdrew their motion as to these defenses, (see

Reply, DE # 410, at 1-2), the court has not considered the deposition excerpts, and there is no

right of public access to those documents.  Therefore, the court will allow the Independent

Growers' motion to seal the documents.  Plaintiffs' consent motion to seal those same documents

pending resolution of the Independent Growers' motion to seal, (DE # 430), will be denied as

moot.  Plaintiffs' consent motion to seal the excerpt from Mike Hope's deposition, (DE # 434),

which plaintiffs filed in support of their reply statement of facts, (DE # 412-10), will be allowed

for the same reasons as the Independent Growers' motion to seal the same excerpt.

## VI.  DISCOMFORT AND ANNOYANCE DAMAGES

### A.    Cross-Motions for Partial Summary Judgment

Plaintiffs allege that the nuisance defendant created caused them "anger, embarrassment,

discomfort, annoyance, inconvenience, decreased quality of life, . . ., [and] physical and mental

discomfort . . . ."  (6/25/15 Order, DE # 31, at 1 (internal quotation marks and citation omitted).)

Plaintiffs seek to recover these so-called discomfort and annoyance damages.  Defendant

contends that such damages are not recoverable under North Carolina law for a temporary

private nuisance.  The parties have moved for partial summary judgment on these remedies

plaintiffs seek as compensatory damages for nuisance.[6]  (DE ## 287, 318.)  As the court has

---

[5] The Independent Growers' motion to seal also concerns other documents.  The court addresses below the sealing
of those documents.
[6] Defendant's motion for partial summary judgment relates to plaintiffs' nuisance and negligence claims.  Defendant
notes that "Plaintiffs have not argued that annoyance damages should be permitted in connection with their

previously noted, North Carolina courts do not appear to have directly addressed whether discomfort and annoyance damages are recoverable for nuisance.  (See 6/25/15 Order, DE # 31 (denying defendant's Rule 12(b)(6) motion to dismiss plaintiffs' claims for annoyance damages).)

"The term nuisance means literally annoyance; anything which works hurt, inconvenience, or damage, or which essentially interferes with the enjoyment of life or property."  Holton v. Nw. Oil Co., 161 S.E. 391, 393 (N.C. 1931) (internal quotation marks and citations omitted).  "Once liability is established for an abatable or temporary nuisance, the remedy includes money damages."  Whiteside, 553 S.E.2d at 440 (citing Phillips v. Chesson, 58 S.E.2d 343, 346 (N.C. 1950)).  "'The kinds of damages recoverable *include*: diminished rental value; reasonable costs of replacement or repair; restoration of the property to its pre-nuisance condition; and other added damages for incidental losses.'"  Id. (emphasis added) (quoting Rudd v. Electrolux Corp., 982 F. Supp. 355, 372 (M.D.N.C. 1997) (citing Phillips, 58 S.E.2d at 348)).  Contrary to defendant's argument, no North Carolina case has held that a plaintiff's monetary recovery for nuisance is limited to those specified damages.  Rather, the case law, at least indirectly, supports the proposition that damages for a private nuisance also include compensation to redress the plaintiff's discomfort and annoyance  See Thomason v. Seaboard Air Line Ry., 55 S.E. 198, 204 (N.C. 1906) (approving of jury instruction "[i]n regard to the measure of damages" for nuisance "that th[e jury] should consider all the circumstances, the depreciation in value of the plaintiffs' home as a dwelling during the three years next preceding the bringing of the action, *the inconvenience, discomfiture, and unpleasantness sustained*" (emphasis added)); Hanna v. Brady, 327 S.E.2d 22, 25-26 (N.C. Ct. App. 1985) (in upholding

---

negligence action . . . ."  (Mem., DE # 288, at 5 n.2.)  Plaintiffs' briefs are directed solely to the issue of recoverability of these damages for a nuisance.

the amount of damages awarded for nuisance, recognizing that, in addition to diminished market value, the plaintiff had put on evidence "that the noise and dust from the quarrying operation affected plaintiff's normal use of his property and his enjoyment of daily life" and that "[t]he type of injuries suffered by the plaintiff—physical pain, annoyance, stress, deprivation of the use and comfort of one's home—are intrinsically 'not susceptible of exact pecuniary compensation'" (citation omitted)).

Allowing a plaintiff to recover such damages comports with the general rule in North Carolina "that a tortfeasor 'is responsible for all damages directly caused by his misconduct, and for all indirect or consequential damages which are the natural and probable effect of the wrong, under the facts as they exist at the time the same is committed and which can be ascertained with a reasonable degree of certainty.'" Watts v. N. Carolina Dep't of Env't & Nat. Res., 641 S.E.2d 811, 818 (N.C. Ct. App. 2007) (quoting Binder v. Gen. Motors Acceptance Corp., 23 S.E.2d 894, 895 (N.C. 1943)), modified and aff'd, 666 S.E.2d 752 (N.C. 2008) (per curiam); see also Whiteside, 553 S.E.2d at 440 ("Plaintiff is entitled to compensation to the extent that he has established damages with as much certainty as the nature of the tort and the circumstances permit." (internal quotation marks and citation omitted)). It is also consistent with the Restatement (Second) of Torts § 929(1)(c) (Am. Law Inst. 1979), another provision of which the North Carolina Court of Appeals has adopted regarding diminution in value and restoration damages awarded as a result of nuisance, among other claims, see BSK Enters., Inc. v. Beroth Oil Co., 783 S.E.2d 236, 249 (N.C. Ct. App. 2016).[7]

---

[7] The Restatement provides:

> (1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for
> > (a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,
> > (b) the loss of use of the land, and

The cases applying North Carolina law on which defendant relies are not to the contrary. Defendant cites to a trio of early North Carolina Supreme Court cases. In each of these railroad right-of-way condemnation cases, the court recognized the rule that personal inconvenience and annoyance resulting from the trains' operations may be considered insofar as they affect the value of the subject property, but those items may not be recovered as distinct items of damage. See Raleigh, C. & S. Ry. v. Mecklenburg Mfg. Co., 85 S.E. 390, 393 (N.C. 1915); Carolina & Yadkin River R.R. v. Armfield, 83 S.E. 809, 811 (N.C. 1914); Durham & N. R.R. v. Trustees of Bullock Church, 10 S.E. 761, 763 (N.C. 1890). The Armfield court noted the rationale behind this rule and left open the possibility that such inconvenience and annoyance damages might be recoverable if, after condemnation, the property owner could establish the railroad's negligence or creation of a nuisance:

> [Diminution in value] damages are allowed and estimated, as stated, on the theory that the right is to be exercised in an orderly and proper manner; for, notwithstanding the acquirement of such an easement, *if an owner is subsequently injured in his proprietary rights by the negligence on the part of the company*, a case . . . to some extent involved in Thomason v. R. R., supra, *or if, in the enjoyment of the right, a nuisance is clearly and unnecessarily created, . . ., an action lies, and, because it does, compensation for injuries attributable to negligence, etc., are not as a rule included.*

83 S.E. at 811 (citations omitted) (emphases added).

In Long v. City of Charlotte, 293 S.E.2d 101 (N.C. 1982), another case on which defendant relies, the North Carolina Supreme Court examined the appropriate remedy for landowners harmed by aircraft flights over their property. The landowners had asserted three counts: inverse condemnation, trespass, and nuisance. Id. at 104. The Long court held that inverse condemnation, rather than trespass or nuisance, was the sole remedy by which the

---

        (c) discomfort and annoyance to him as an occupant.

   . . . .

Restatement (Second) of Torts § 929 (Am. Law. Inst. 1979).

landowners may recover against the municipality that owned and operated the subject airport. Id. at 108. Thus, the court held that the trial court properly dismissed the trespass and nuisance counts. Id. at 111. It then went on in *dicta* to examine whether the plaintiffs' physical distress and mental anguish allegations, which appeared in the trespass and nuisance counts, "would be proper in an inverse condemnation count." Id. at 112. The court stated, "The trial court properly struck these allegations as they were stated as independent elements of damage resulting from the alleged torts of the trespass and nuisance counts *which were stricken*." Id. (emphasis added). It relied on the three earlier railroad condemnation cases, discussed above, to recognize that had the plaintiffs alleged physical distress and mental anguish in their inverse condemnation count, the allegations would be proper to "show[] their effect, if any, on the cause and extent of the diminution in the value of the real estate." Id. at 113. The court does not read this decision to mean that the same principle applies to any nuisance claim. (See Def.'s Mem., DE # 288, at 10.)

Defendant also relies on Grant v. E.I. Du Pont de Nemours & Co., No. 4:91-CV-55-H, 1995 WL 18239435 (E.D.N.C. July 14, 1995), aff'd, 91 F.3d 133 (4th Cir. 1996) (table) (per curiam). There, a number of landowners sued Du Pont for nuisance, among other claims, based on contamination to property adjoining their property. The plaintiffs' own property was not contaminated, and they alleged diminution in property value and mental anguish as injuries. Grant, 1995 WL 18239435, at *5. The court emphasized that the plaintiffs did not allege invasion of their property rights. Id. at *6. As such, the plaintiffs could not recover for diminution in property value. Id. As for the plaintiffs' mental anguish—the only other alleged injury—the court noted it "is in the nature of a personal injury, rather than an injury to property." Id. In determining the plaintiffs could not recover damages for their emotional distress, the court stated,

> They are not, properly speaking, damages flowing from any injury to the plaintiffs' property, which are the injuries an action for nuisance is designed to redress. In essence, without their claims for diminution of property value, the plaintiffs' nuisance claim is that Du Pont's negligence, *in the absence of any physical impact or other wrong to the plaintiffs or their property*, caused the plaintiffs severe emotional distress. These claims are, at bottom, negligent infliction of emotional distress claims.

Id. (emphasis added).  The court therefore concluded that Du Pont was entitled to judgment as a matter of law on the nuisance claim.  Id.

Unlike the factual situation in Grant, plaintiffs here have alleged interference with the use and enjoyment of property they own or lawfully occupy.  Plaintiffs' alleged annoyance and discomfort flows from that wrong defendant purportedly created.  Accordingly, if plaintiffs establish a nuisance, they are entitled to recover damages, including those characterized as discomfort and annoyance damages.  Defendant's motion for partial summary judgment as to plaintiffs' claims for these damages will be denied, and plaintiffs' cross-motion on the availability of these damages will be allowed.

B.      Related Motions

Plaintiffs have filed a motion for leave to file supplemental authority in support of their partial summary judgment motion.  (DE # 457.)  In the court's discretion, that motion will be allowed.

Defendant filed a motion to seal, requesting that unredacted versions of plaintiffs' response brief, (DE # 388), and concomitant statement of facts, (DE # 390), and plaintiffs' Exhibit 2, (DE # 389), be maintained under seal.  (DE # 435.)  Exhibit 2 consists of several emails between defendant's employee and consultants regarding possible state legislation.  The redacted portions of plaintiffs' response brief and statement of facts quote from the emails.

The quoted excerpts from the email exchange contained in plaintiff's summary judgment filings are not relevant to the court's analysis, and the court has not considered the excerpts. Therefore, there is no right of public access to the email exchange. Accordingly, the court will allow defendant's motion to seal the exhibit and the unredacted versions of documents that quote from that exhibit.

## VII. "FEAR OF" CLAIMS

Plaintiffs allege that the nuisance "caused by Defendant's swine . . . has caused . . . reasonable fear of disease and adverse health effects." (6/25/15 Order, DE # 1, at 1 (internal quotation marks and citation omitted).) As with discomfort and annoyance damages, defendant seeks judgment as a matter of law on these "fear of" "claims" on the ground that such claims are not available under North Carolina law.

In support of this position, defendant relies primarily on the North Carolina Court of Appeals' decision in Curl v. American Multimedia, Inc., 654 S.E.2d 76 (N.C. Ct. App. 2007). There, the plaintiffs alleged that the defendants were responsible for the contamination of the plaintiffs' wells with toxic chemicals and sought to recover damages, including those based on personal injury, even though none of the plaintiffs had been diagnosed with an illness caused by exposure to those toxic chemicals. As to personal injury, the court stated that the plaintiffs were asking the court to

> recognize in toxic contamination cases at least these three causes of action, all of which are firmly rooted in traditional tort law: (1) infliction of a loss of chance of continued health/increased risk of serious disease; (2) an invasion of personal autonomy, specifically of the right not to be compelled to undergo heightened medical monitoring for the remainder of their lives; and (3) the instilling of fear of cancer or other deadly disease.

<u>Id.</u> at 80-81.  The court declined "to create these new causes of action" because the plaintiffs had not asserted the proposed causes of action in their complaint and because "the 'recognition of a new cause of action is a policy decision which falls within the province of the legislature.'"  <u>Id.</u> at 81 (citation omitted).  Importantly, the court noted

> [t]he cases cited by Plaintiffs in support of these damages all involve future damages claimed in connection with a recognized *present injury*.  However, these cases do not address or support a freestanding claim for future medical expenses in the absence of a present injury.

<u>Id.</u> (emphasis in original).

The court agrees with plaintiffs that the cases here are distinguishable from <u>Curl</u>. Notably, plaintiffs here are not attempting to bring an independent cause of action for future medical monitoring (or otherwise) as the <u>Curl</u> plaintiffs were.  Nor do they seek "fear of" damages as a distinct category of damages.  Rather, some of plaintiffs claim concern about, and fear of, disease and adverse health effects as evidence of their discomfort and annoyance, for purposes of proving both liability and damages for the nuisance.  As discussed in the prior section, discomfort and annoyance damages are recoverable for a nuisance, and therefore, plaintiffs' evidence of their fear of disease or adverse health effects, offered in support of such damages (as well as in support of liability), is not barred.[8]  The court will deny defendant's motion for partial summary judgment on plaintiffs' "fear of" claims.

## VIII.  PUNITIVE DAMAGES

A.      <u>Motion for Partial Summary Judgment</u>

Defendant requests that partial summary judgment be entered in its favor on the issue of punitive damages.  (DE # 282.)  Defendant argues that the undisputed facts establish it lacked the

---

[8] Defendant also relies on <u>Grant</u> in support of its argument.  For the reasons discussed in the prior section, <u>Grant</u> is distinguishable.

culpable mental state under N.C. Gen. Stat. § 1D-15 necessary for the imposition of punitive damages. In response, plaintiffs initially raise a number of evidentiary challenges to evidence defendant submitted in support of its motion and argue defendant has waived its defense to punitive damages. Regarding the substance of defendant's Chapter 1D defense, plaintiffs claim genuine issues of material fact exist as to whether defendant engaged in willful or wanton conduct.

At the outset, the court addresses plaintiffs' waiver argument. Plaintiffs contend that defendant has waived the right to assert any defense based on Chapter 1D because defendant failed to plead any provision thereof as an affirmative defense in its answers. Plaintiffs are correct that "it is indisputably the general rule that a party's failure to raise an affirmative defense in the appropriate pleading results in waiver . . . ." Brinkley v. Harbour Recreation Club, 180 F.3d 598, 612 (4th Cir. 1999) (citation omitted), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). And, defendant does not dispute that it did not raise its Chapter 1D defense in its answers. Thus, the issue is whether a defense based on Chapter 1D is an affirmative defense.

Under North Carolina law, plaintiffs have the burden of proof on the issue of entitlement to punitive damages. Namely, under Chapter 1D, they "must prove by clear and convincing evidence that the defendant is liable for compensatory damages and that the conduct causing the plaintiff's injury was accompanied by fraud, malice, or willful or wanton conduct . . . ." Cockerham-Ellerbee v. Town of Jonesville, 660 S.E.2d 178, 179 (N.C. Ct. App. 2008) (citing N.C. Gen. Stat. §§ 1D-5(7), -15(a)). On summary judgment, defendant challenges whether plaintiffs can produce sufficient evidence of defendant's willful or wanton conduct, and therefore, it is contesting plaintiffs' ability to make out a *prima facie* case of punitive damages.

See George v. Greyhound Lines, Inc., 708 S.E.2d 201, 204-05 (N.C. Ct. App. 2011). "A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." Keeler Brass Co. v. Continental Brass Co., 862 F.2d 1063, 1066 (4th Cir. 1988) (internal quotation marks, alteration, and citation omitted). Accordingly, while defendant raises a defense to punitive damages under a specific provision of 1D, it is not technically an affirmative defense, and waiver did not occur by virtue of its failure to raise the defense in its answers.

Turning to the substance of defendant's motion, and setting aside the objections plaintiffs raise to defendant's evidence, the court concludes that the punitive damages question is to be decided at the conclusion of plaintiffs' case-in-chief or after all the evidence is heard. Therefore, the court will deny defendant's motion for partial summary judgment.

B.      Motions to Seal and to Substitute Document

Related to that motion, defendant filed a motion to seal portions of (1) certain deposition excerpts plaintiffs filed in support of their response brief and/or their statement of facts; (2) plaintiffs' statement of facts which quotes from, or characterizes the testimony in, those excerpts; (3) plaintiffs' response brief which quotes from, or characterizes the testimony in, those excerpts; and (4) the report of plaintiffs' expert C. Robert Taylor, Ph.D. (DE # 377.) Defendant submitted redacted versions of some of the subject documents and proposes that its redacted versions be filed in place of the versions that plaintiffs filed. Defendant further requests that the unredacted versions of plaintiffs' response brief and statement of facts and of the report of Dr. Taylor be maintained under seal.

The Independent Growers have also filed a related motion to seal. (DE # 379.) Their motion pertains to some of the same documents as defendant's motion to seal as well as

additional deposition excerpts and copies of photographs from farm inspection visits, all of which plaintiffs filed in support of their response brief. (See Mem., DE # 380.)

With briefing on the motions to seal having concluded, it is apparent that some of the documents can be filed publicly. Despite plaintiffs' provisionally filing under seal the following documents, neither defendant nor the Independent Growers request that the court maintain these documents under seal: plaintiffs' Exhibits 2 (DE # 365-1); 6 (DE # 365-5)[9]; 12 (DE # 365-7); and 15 (DE # 365-9). Accordingly, the court will direct the Clerk to unseal these documents.

There are a number of portions of deposition excerpts that defendant and/or the Independent Growers request remain under seal, and plaintiffs have not cited to those portions in their response brief. [10] Those portions are as follows:

| DEPONENT | PAGE:LINE(S) | WITHIN DOCKET ENTRY # |
|----------|--------------|------------------------|
| D. Butler | 228:14-25 | 365-6 |
| Coffey | 35:1-25; 158:1-159:14 | 365-12 |
| Hilton | 116:3-5; 117:7-25 | 365-2 |
| M. Butler | 20:7-25; 66:1-67:5; 80:5-13 | 365-13 |
| Stanley | 129:10-14; 129:21 | 365-4 |

---

[9] Although the Independent Growers initially identified this document in their motion to seal, (DE # 379, at 2), they later stated they have no objection to the document being unsealed, (Reply, DE # 468, at 4).

[10] In their motion to seal, the Independent Growers actually request that *entire* deposition excerpts be maintained under seal. However, it is clear that it is not necessary for the entirety of these deposition excerpts to remain under seal. For example, plaintiffs provisionally filed under seal pages 116-17, 151, and 195 from Dean Hilton's deposition. (See DE # 365-2.) The Independent Growers request that this filing remain sealed because it contains "sensitive, financial, commercially-valuable information" about the contract between Greenwood Livestock, LLC, one of the Independent Growers, and defendant. (Mem., DE # 380, at 4.) The only specific pages of the excerpts the Independent Growers reference are pages 116 and 117. (Reply, DE # 468, at 3.) While portions of those pages arguably contain confidential business information, the entire pages do not. Likewise, pages 151 and 195 do not contain any such information. Therefore, the court deems it appropriate to limit sealing of those portions defendant identified by line and page number and to which plaintiffs did not cite in their response brief.

Because plaintiffs did not cite to this deposition testimony in their response brief, the court has not considered the testimony in ruling on defendant's motion for partial summary judgment. As such, there is no right of public access to these portions of testimony.

As for the remainder of the deposition excerpts plaintiffs provisionally filed under seal, plaintiffs *do* rely on certain portions to support their opposition to defendant's motion for partial summary judgment on the issue of punitive damages. First, defendant and the Independent Growers request that portions of the depositions of two representatives of the Independent Growers be maintained under seal on the ground that the portions pertain to confidential business information about the terms of the contract between the subject Independent Grower and defendant. Specifically, they request the following portions remain sealed: Joey Carter, (DE # 365-3), 59:8-61:12, and Billy Kinlaw, (DE # 365-10), 58:1-23. The court agrees with defendant that if this information were made public, a competitor might obtain an advantage, and there are no alternatives to sealing other than redacting the excerpts in a limited manner. However, the court limits the redaction in Kinlaw's deposition excerpts to 58:1-12. The Independent Growers also suggest that page 61 of Kinlaw's deposition remain under seal on the ground that it "contains a commercially-sensitive piece of information regarding the recordkeeping responsibilities" of a person involved with the farm. (Reply, DE # 468, at 4.) The fact that Kinlaw does 95 percent of "the financial record keepings and stuff," (DE # 365-10, at 6), is hardly sensitive business information and thus should not be filed under seal.

Next, defendant requests that the following portions of excerpts from its employees' depositions remain under seal: Don Butler, (DE # 365-5), 213:1-11, 244:1-245:25, and Kraig Westerbeek, (DE # 365-8), 170:12-171:21. Defendant argues that Butler's testimony is confidential and should not be released because it relates to strategic decisions of the company in

the regulatory arena. On page 213 of Butler's deposition, plaintiffs' counsel quotes from a document and asks Butler to confirm what the document says. Plaintiffs' response brief quotes from the document, citing Butler's testimony in support. (DE # 378-2, at 16.[11]) Defendant does not propose that this portion of plaintiff's response brief be redacted. (See Mem., DE # 378, at 12; Resp., DE # 378-2, at 16.) Thus, the information is already in the public domain, and there is no reason for Butler's testimony confirming quotes from that information to be sealed. As for the other portion of Butler's testimony, plaintiffs' counsel again asks Butler to confirm certain quotes from a document, which Butler does and he then goes on to explain the context of the document. (DE # 365-5, at 244:1-245:25.) The court finds defendant has not overcome the First Amendment right of access to this information, and therefore, sealing is not warranted.

Turning to Westerbeek's testimony, defendant contends that it too is confidential and because it "contain[s] information relating to [defendant's] and the independent grower's responsibilities under swine production contracts and [] reflect[s] [defendant's] business judgment with respect to regulatory compliance and the optimal conditions in the barns . . .," competitors would unfairly benefit. (Mem., DE # 378, at 10.) Although Westerbeek does mention at one point defendant's contract with growers and testifies regarding what the company requires of the growers in terms of odor reducing technology and whether the company conducts inspections or audits of growers for odor, the court is not persuaded defendant's competitors would gain some unfair business advantage if this testimony were made public and therefore concludes defendant has not overcome the First Amendment right of access. As such, the sealing of Westerbeek's testimony on pages 170-71 is not justified.

---

[11] The court cites to the proposed redacted version of plaintiffs' response brief that *defendant* filed because it contains significantly fewer redactions than the version plaintiffs filed. (Compare DE #356 with DE # 378-2.)

Consistent with this order, the court will direct plaintiffs to file publicly the subject deposition excerpts with redactions, as required.

As for the remaining documents defendant and/or the Independent Growers want sealed, the court considers each in turn. The Independent Growers request that copies of 16 photographs taken during site-inspections of one or more of the subject farms, (DE # 365-11), be sealed. The photographs appear to be the inside of hog buildings, and many of them contain hogs themselves and/or what appears to be manure. Among other reasons, the Independent Growers contend that as non-parties, they have a legitimate interest protecting the interiors of the hog buildings—private property that they own—from view by others. They are concerned an outsider might use the photographs to "assess[] the layout, design, construction, materials used in, and other proprietary information specific to these landowners' farm buildings." (Reply, DE # 468, at 6.)

Plaintiffs rely on the photographs as part of their argument that genuine issues of material fact exist regarding whether defendant's conduct rises to the level of willful or wanton. Specifically, the pertinent provision of plaintiffs' response brief reads:

> As for facility cleanliness and housekeeping standards, Smithfield's 2015 Sustainability Report reported that it "is a common misconception [that pigs wallow in their own manure]. In modern times, slatted floors and routine flushing keep animal pens clean, and farm employees maintain the barns." (Pl. App. Ex. 19.) Defendant's "cleanliness" characterization is undermined by evidence obtained during the hog site inspections. (Pl. App. Ex. 18).

(DE # 378-2, at 18 (footnote omitted) (latter bracket supplied).) That evidence is the photographs at issue.

According to plaintiffs, one of the photographs ("Photo 6") was taken at the Sholar operation. (Robinson Decl., DE # 453-1, ¶ 4(f).) The Independent Growers acknowledge that

they lack standing to claim this photograph should be sealed, (Reply, DE # 468, at 6 n.2), because defendant owns this site, (Resp., DE # 453, at 11 & n.18).  Defendant does not contend Photo 6 should be filed under seal.  For purposes of plaintiffs' response to defendant's motion for partial summary as to punitive damages, the court accepts Photo 6 as sufficiently supportive of the proposition for which plaintiffs cited it.  The court has not considered the remaining photographs in ruling on summary judgment.  Accordingly, there is no right of public access to those photographs.  The court will direct plaintiff to file publicly Photo 6 and will direct the Clerk to maintain the other photographs under seal.

In addition, defendant and the Independent Growers request that the unredacted version of the report of plaintiffs expert Dr. Taylor, (DE # 365-14), remain under seal.  Plaintiffs and defendant each filed redacted versions of Dr. Taylor's report.  (DE ## 363-27, 378-3.)  Since that time, plaintiffs and defendant agreed to one redacted version being filed publicly and now jointly move that the agreed-upon redacted version be substituted for the redacted versions previously filed.  (DE # 462.)  They also request that the earlier-filed redacted versions of Dr. Taylor's report be maintained under seal.  (Id.)

Plaintiffs rely on Dr. Taylor's report for four statements in their response brief.  (See DE # 378-2, at 29.)  The court has not considered the report itself in ruling on defendant's motion for partial summary judgment, but rather the court accepts plaintiffs' representation that the report stands for the propositions cited in their response brief.  Because the court has not considered Dr. Taylor's report (redacted or unredacted), it is not a judicial record, and the public is not entitled to access.  The court will allow the parties' motion to substitute, and the unredacted and earlier-filed redacted versions of Dr. Taylor's report, (DE ## 363-27, 365-14, 378-3), shall remain

sealed.  The parties' joint motion to provisionally file under seal their earlier-filed redacted

versions of Dr. Taylor's report, (DE # 456), will be denied as moot.

Regarding plaintiffs' response brief itself, plaintiffs filed provisionally under seal an

unredacted version, (DE # 365), and filed publicly a redacted version, (DE # 356).

Contemporaneously with its motion to seal, defendant filed a version of plaintiffs' response brief

containing its proposed redactions, (DE # 378-2).  As noted above, defendants' proposed

redacted version contains significantly fewer redactions than plaintiffs' redacted version.

Because the court has concluded above that Westerbeek's deposition testimony on pages 170-71

and Butler's deposition testimony on pages 244-45 should not be sealed, the redactions

defendant proposes on pages 14 and 17, (DE # 378-2), are unnecessary.   The only other

redactions defendant proposes are on page 29.  The first redaction on that page (line 5) is the

cited deponents' characterization of their farms' contracts with defendant.  The cited testimony is

not under seal, and therefore, there is no reason for the redaction.  The other redactions on page

29 are appropriate because they pertain to confidential business information about the pay terms

of the contract between defendant and the Independent Growers, which the court has concluded

should remain under seal.  The court will direct plaintiffs to file a corrected, redacted version of

their response brief consistent with this order and the Clerk to maintain under seal the unredacted

version of that brief.

Accompanying their response brief, plaintiffs filed a statement of facts.  As with the

response brief, plaintiffs filed provisionally under seal an unredacted version, (DE # 365-15), and

filed publicly a redacted version, (DE # 357).  Again, defendant filed a proposed redacted

version, (DE # 378-1), containing significantly fewer redactions than plaintiffs' redacted version.

The court will direct plaintiffs to file a corrected, redacted version of their statement of facts

consistent with this order and the Clerk to maintain the unredacted version of that statement under seal.

## IX.  DEFENDANT'S MOTION IN LIMINE

Defendant moves *in limine* to exclude the testimony of plaintiff's expert James Merchant, M.D., Dr.P.H.  (DE # 397.)  Plaintiffs offer Dr. Merchant's testimony on numerous topics given his background and experience in public health and epidemiology.  Having fully considered the briefs and supporting documents relative to defendant's motion, the court will not exclude Dr. Merchant's testimony in its entirety and will therefore deny defendant's motion.

## X.  CONCLUSION

The following motions are DENIED:

1. Defendant's motion for partial summary judgment on annoyance damages claims, (DE # 287);

2. Defendant's motion for partial summary judgment on plaintiffs' "fear of" claims, (DE # 278);

3. Defendant's motion for partial summary judgment concerning plaintiffs with insufficient property interests, (DE # 315);

4. Plaintiffs' omnibus motion for partial summary judgment on various of defendant's affirmative defenses, (DE # 321);

5. Defendant's motion for partial summary judgment on plaintiffs' punitive damages claims, (DE # 282);

6. Plaintiffs' consent motion to file under seal, (DE # 430);

7. Joint motion to file under seal, (DE # 456); and,

8. Defendant's motion in limine to exclude expert testimony of James Merchant, M.D., Dr.P.H., (DE # 397).

The following motions are ALLOWED:

1. Plaintiffs' motion for partial summary judgment with regard to defendant's right-to-farm act defense, (DE # 305);

2. Plaintiffs' motion for partial summary judgment on the availability of discomfort and annoyance damages, (DE # 318);

3. Plaintiffs' motion for leave to file supplemental authority, (DE # 457);

4. Defendant's motions to seal, (DE # 435, 437);

5. Plaintiffs' consent motion to file under seal, (DE # 434); and,

6. Joint motion to substitute document, (DE # 462).

The following motions are ALLOWED IN PART and DENIED IN PART:

1. Defendant's motion to seal, (DE # 377), and

2. Joint motion to seal by seven non-parties, (DE # 379).

The Clerk is DIRECTED to unseal the following documents: DE ## 365-1, 365-5, 365-7, and 365-9.

The Clerk is DIRECTED to maintain under seal the following documents: DE ## 363-27, 365, 365-11, 365-14, 365-15, 366-1, 366-4, 378-3, 388, 389, 390, 412-10, 426, 427, 428, and 429.

Plaintiffs are DIRECTED to file publicly the following documents: Photo 6 from DE # 365-11; deposition excerpts with redactions consistent with the rulings in Section VIII.B; and, redacted versions of their brief and statement of facts in response to defendant's motion for partial summary judgment as to punitive damages consistent with the rulings in Section VIII.B.

Defendant's motion to sever and for separate trials is SET for hearing on 4 December 2017, 10:30 a.m., Terry Sanford Federal Building and Courthouse, 310 New Bern Avenue, Courtroom 2, Raleigh, North Carolina. At that same time, the court will conduct a status conference. The parties should be prepared to discuss whether a court-hosted settlement conference and/or mediated settlement conference might be beneficial; cases for trial; final pretrial conference dates; and trial dates.

This 8 November 2017.


_____
W. Earl Britt
Senior U.S. District Judge